IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALAIKA WILLIAMS,

*Plaintiff,*

v.

GOLDMAN SACHS BANK USA, SALT
LAKE CITY BRANCH and JPMORGAN
CHASE BANK, N.A.,

*Defendants.*

CIVIL ACTION
NO. 26-1368

Pappert, J.                                                        May 27, 2026

**MEMORANDUM**

*Pro se* plaintiff Malaika Williams sued Goldman Sachs Bank USA and JPMorgan Chase Bank, N.A. for reducing the credit limit on her Apple Card.  She amended once as a matter of course and, after Chase moved to dismiss all claims, sought leave to file a proposed second amended complaint.  In that pleading, she alleged numerous violations of 42 U.S.C. § 1981 (Count I), the Equal Credit Opportunity Act (Count II), the Credit CARD and Truth in Lending Acts (Count III), the Fair Credit Reporting Act (Count IV), the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count V), the Pennsylvania Fair Credit Extension Uniformity Act (Count VI), fraudulent and negligent misrepresentation (Count VII), and unjust enrichment (Count VIII).  Chase opposed the motion, arguing amendment would be futile because she failed to state claims upon which relief could be granted.

The Court grants Williams's motion for leave to amend, denies as moot Chase's pending motion to dismiss, and construes Chase's opposition to Williams's motion as a

1

renewed motion to dismiss,[1] which the Court grants.  All claims against Chase are dismissed with prejudice.

I

In September of 2025, Maliaka Williams, a black woman, opened an Apple Card account with Goldman Sachs.  (SAC ¶¶ 14–15, Mot. Ex. 1, Dkt. No. 25-1.)  Goldman issued her an initial credit limit of $4,500, (*id.* ¶ 14), and she purportedly never defaulted or paid late, *see* (*id.* ¶ 41).

On December 30, 2025, Chase entered into a forward purchase commitment to acquire the Apple Card portfolio from Goldman.  (*Id.* ¶ 22.)  Apple and Chase announced a week later that Chase would "become the new issuer of Apple Card, with an expected transition in approximately 24 months."  (*Id.* ¶ 23); (Joint Pub. Announcements at 10, 12, Mot. Ex. C, Dkt. No. 25-2.)  Goldman released a similar statement: "The transition is expected to take place in approximately 24 months; until that is complete, **Goldman Sachs will continue to operate the program and record ongoing business results**."  (SAC ¶ 24); (Joint Pub. Announcements at 13.)

Williams received an email from Apple Card Support on January 8, 2026, informing her that "Goldman Sachs Bank USA has reviewed your account and decreased your Apple Card credit limit to $500.00."  (Jan. 8, 2026 Email from Apple to Williams at 3, Mot. Ex. A, Dkt. No. 25-2.)  The email explained, "**Goldman Sachs Bank USA received your credit score from TransUnion Consumer Solutions**," which showed Williams had opened "too many installment accounts" and "significant[ly] increase[d]" activity on previously inactive accounts.  (*Id.*)  Other parts

---

[1]    Williams had an opportunity to respond to Chase's arguments.  *See* (Pl.'s Reply ¶¶ 8–16, Dkt. No. 28).

of the email listed Goldman's insignia, address, antidiscrimination notice and involvement with Apple Card. (*Id.* at 3–5.) Chase was never mentioned.

Williams nonetheless blames Chase for the decision. Around the time she received her Apple Card, Chase reduced the credit limit on her Chase Freedom Unlimited credit card account from $7,800 to $4,600,[2] *see* (SAC ¶ 19), which, she thinks, negatively impacted her TransUnion credit report, *see* (*id.* ¶ 21). She also alleges, "[o]n information and belief," that Chase conducted due diligence on the Apple Card portfolio prior to announcing the commitment, received or reviewed consumer report data from Apple Card accounts, participated in credit underwriting and risk management on those accounts, and coordinated with Goldman to reduce her credit limit. *See* (*Id.* ¶ 30).

## II

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts generally do so where the plaintiff can cure the defects in the pleadings and state a valid legal claim. 3 *Moore's Federal Practice* § 15.15[3] (2026). Denying leave to amend is inappropriate "unless it is beyond a doubt that there are no facts to support relief." *Id.* That standard "is especially true for *pro se* plaintiffs, for whom the court should grant leave at least once if there is any indication of a valid claim." *Id.*

Allowing Williams leave to file her proposed second amended complaint is appropriate. She is a *pro se* plaintiff and the Court has yet to address the merits of her claims. *Cf. Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 427 (3d Cir. 1987) (holding that the purpose of pleading "is to facilitate a proper decision on the merits" (citation omitted)).

---

[2]    Williams is separately suing Chase for reducing her credit limit. *See Williams v. JPMorgan Chase Bank, N.A.*, No. 26-1367.

The proper vehicle for assessing Chase's arguments about futility is a motion to dismiss under Rule 12(b)(6), not a motion for leave to amend under Rule 15(a).  Otherwise, the First Amended Complaint—which Williams no longer stands by—would be the operative pleading, and the Court would have to revisit claims she now seeks to amend.

III

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.  *Twombly*, 550 U.S. at 570.

4

IV

A

Section 1981 bars discrimination on the basis of race in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981(a). To state a claim, a plaintiff must show: "(1) [s]he belongs to a racial minority, (2) an intent to discriminate on the basis of race by the defendant and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (citation modified).

Without specifying the acts or omissions for which Chase was responsible, Williams conclusorily alleges the "Defendants" "modified, impaired, and effectively terminated [her] contractual rights," "intentionally discriminated against [her] on the basis of race," treated similarly situated nonminority account holders differently than her, used race-based algorithms in underwriting decisions, and provided pretextual reasons for reducing her credit limit. (SAC ¶¶ 53–54.) None of those allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (citation modified).

B

More to the point, Williams cannot plausibly allege Chase had any involvement with her Apple Card. She opened the account with Goldman, *see* (SAC ¶ 15), which marketed Apple Card to her and issued her an initial credit limit of $4,500, *see* (*Id.* ¶¶ 14, 16). The email Williams relies on from Apple Card Support confirmed that Goldman—not Chase—reduced her credit limit:

- "Goldman Sachs Bank USA has reviewed your account and decreased your Apple Card credit limit to $500.00."

5

- "**Goldman Sachs Bank USA received your credit score from TransUnion Consumer Solutions**."

- The "Goldman Sachs" insignia appeared in the heading of the email.

- "Goldman Sachs Bank USA does not make credit decisions on the basis of race, . . . and also does not consider your assets in checking, savings, or investment accounts unless they were provided during the Apple Card application."

- "Apple Card is issued by Goldman Sachs Bank USA, Salt Lake City Branch."

- The email ended with Goldman's address in Philadelphia.

(Jan. 8, 2026 Email from Apple to Williams at 3–5.)  Nowhere did the email mention Chase, let alone suggest its role in reducing her credit limit.

Public announcements, which Williams attaches to her pleading, show Chase had nothing to do with the decision.  A week before the email, Chase "entered into a forward purchase commitment to acquire" the Apple Card portfolio from Goldman. (SAC ¶ 22.)  Chase, Apple and Goldman all announced that Chase "expected" to take over Apple Card "in approximately 24 months."  (*Id.* ¶ 23); (Joint Pub. Announcements at 10, 12–13.)  In the meantime, Goldman would "**continue to operate the program and record ongoing business results**."  (SAC ¶ 24); (Joint Pub. Announcements at 13.)

Williams tries to downplay these statements, alleging they "do not, and cannot establish what specific operational, informational, or decision-making roles Chase undertook during the transition period."  (SAC ¶ 25.)  She contends, without any factual support, that Chase must have had some involvement in the decision based on her suspicions and the timing of the email "one day after the public announcement of

the Chase acquisition." (*Id.* ¶¶ 25, 30.)  Those allegations are conclusory, implausible, and belied by the exhibits to the Second Amended Complaint.  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) ("And if her own exhibits contradict her allegations in the complaint, the exhibits control.").  The more plausible inference is that Chase could not have done anything to any Apply Card account, much less decrease the credit limit on her account specifically.

She also assumes Chase influenced Goldman's decision because, months earlier, it reduced the credit limit on her Chase Freedom Unlimited account, which purportedly contributed to her TransUnion credit report.  *See* (SAC ¶¶ 19–21).  Yet she provides no nonconclusory allegations, much less facts, indicating as much, and her speculation about Chase's involvement doesn't "allow[] the court to draw the reasonable inference that [Chase] is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

V

Williams next alleges Chase violated the ECOA by discriminating against her race and providing a deficient adverse action notice.  (SAC ¶¶ 62–69.)

A

The ECOA makes it unlawful for creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a)(1).  To state an ECOA claim, a plaintiff must allege she: (1) was a member of a protected class, (2) applied for credit from the defendant, (3) was qualified for the credit and (4) was denied credit despite her qualifications.  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010) (citation omitted).

7

But Chase was not plausibly involved in the decision to decrease the credit limit on her Apple Card.  *See supra* Section IV.B.  So she could not have requested, and Chase could not have denied, any credit for her account.  *Cf. Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) ("The plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit.").

B

Nor does Williams state a claim under § 1691(d)(1).  That provision requires a "creditor" to notify an applicant of its action on an application "[w]ithin thirty days . . . after receipt of a completed application for credit."  15 U.S.C. § 1691(d)(1).  A "creditor" is "a person who, in the ordinary course of business, regularly participates in the decision of whether or not to extend credit."  12 C.F.R. § 202.2(1).  A person cannot be a "creditor regarding any violation of the act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction."  *Id.*  If a creditor takes an "adverse action" against an applicant, which includes the "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested," the ECOA and its implementing regulation, known as Regulation B, "require the creditor to send a written notice to the applicant."  *Dieffenbach v. RBS Citizens, N.A.*, 514 F. App'x 125, 128 (3d Cir. 2013) (quoting 15 U.S.C. § 1691(d)(6) and 12 C.F.R. § 202.9(a)(1)(iii)).

Nothing in the Second Amended Complaint suggests Chase was a "creditor," or had any knowledge or reasonable notice regarding Goldman's decision to decrease her

8

credit limit.  Again, Chase was not plausibly involved in any credit transactions on any Apple Card account, *see supra* Section IV.B, and it could not have adversely acted against Williams.

## VI

Williams next accuses Chase of violating 15 U.S.C. §§ 1637(i) and 1665c.  (SAC ¶¶ 71–73.)  Section 1637(i) requires a "creditor" of "any credit card account under an open end consumer credit plan" to provide cardholders with written notice forty-five days in advance of "any significant change" to the terms of their credit account.  15 U.S.C. § 1637(i)(2).  Section 1665c likewise applies to a "creditor" of "open end consumer credit plans."  *Id.* 1665c(a).  Once more, she cannot show Chase was a "creditor" of her Apple Card account.  *See supra* Section IV.B.

## VII

She additionally brings an FCRA claim under 15 U.S.C. § 1681m(a), (SAC ¶ 42), but that provision "is not enforceable by private citizens," *Traore v. Equifax Info. Servs. LLC*, No. 25-2822, 2025 WL 1933712, at *2 n.4 (E.D. Pa. July 14, 2025) (citing 15 U.S.C. § 1681m(h)); *Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m."); *Doe v. Charter Comm'ns, LLC*, 131 F.4th 323, 330 (5th Cir. 2025) (same); *Wood v. Third Fed. Sav. & Loan Ass'n*, No. 23-3042, 2023 WL 8174269, at *3 (6th Cir. Nov. 20, 2023) (same); *N'jai v. U.S. Dep't of Educ.*, No. 22-5243, 2023 WL 3848363, at*1 (D.C. Cir. June 2, 2023) (same).

VIII

William also fails to allege Chase violated § 201–2(4)(xxi) of the UTPCPL.  (SAC ¶ 83.)  That statute prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices," 73 Pa. Stat. & Cons. Stat. Ann. § 201–3, and provides a nonexhaustive list of such acts, *id.* § 201–2(4).  Section 201–2(4)(xxi), the catch-all provision, forbids "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *Id.* § 201–2(4)(xxi).  To state such a claim, a plaintiff must show she (1) justifiably relied on a defendant's wrongful conduct or representation and (2) suffered harm as a result.  *See Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425, 438 (Pa. 2004); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).  Chase could not have done anything wrongful to Williams because, again, it had nothing to do with her Apple Card account.  *See supra* Section IV.B.  And she admits Goldman—not Chase—solicited and marketed Apple Card to her.  *See* (SAC ¶¶ 16–17).

She also cannot state a claim under the FCEUA because her UTPCPL claim fails.  *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015).

IX

To state a fraudulent misrepresentation claim, a plaintiff must allege: "(1) a misrepresentation, (2) fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)).  And negligent misrepresentation

10

requires: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (citation omitted). Williams states neither claim because Chase never made a representation about Apple Card or intended to induce her to act. *See supra* Section IV.B.

X

Finally, Williams cannot state a claim for unjust enrichment. To do so, she must allege: (1) she "conferred benefits on the defendant," (2) the defendant "appreciated such benefits" and (3) "the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412 (E.D. Pa. 2023) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)). But Chase never appreciated, accepted or retained benefits from Williams for the reasons already explained. *See supra* Section IV.B.

XI

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Allowing Williams to amend would be futile. She cannot allege any facts to suggest Chase's involvement in the decision to reduce the credit limit on her Apple Card account.

11

An appropriate Order follows.

                                        BY THE COURT:



                                        **/s/ Gerald J. Pappert**
                                        Gerald J. Pappert, J.