**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MALAIKA WILLIAMS,<br>*Plaintiff,*<br>v.<br>GOLDMAN SACHS BANK USA, et al.<br>*Defendants.* | CIVIL ACTION<br>NO. 26-1368 |

**Pappert, J.** **October 14, 2026**

**MEMORANDUM**

*Pro se* Plaintiff Malaika Williams sued Goldman Sachs Bank USA for reducing the credit limit on her Apple Card. After Williams amended her complaint twice, Goldman moved to compel arbitration and seeks to stay the case. The Court grants Goldman's motion, compels arbitration and stays these proceedings while the parties arbitrate Williams' claims.

I

In September of 2025, Maliaka Williams opened an Apple Card account with Goldman Sachs. (SAC ¶ 15, Dkt. No. 31.) Goldman issued her an initial credit limit of $4,500, (*id.*), and she purportedly never defaulted or paid late, *see* (*id.* ¶ 41). On January 8, 2026, Williams received an email from Apple Card Support informing her that "Goldman Sachs Bank USA has reviewed your account and decreased your Apple Card credit limit to $500.00." (Jan. 8, 2026, E-Mail from Apple to Williams at 3, Mot. Ex. A, Dkt. No. 25-2.) The e-mail stated that Goldman received Williams' credit score from TransUnion Consumer Solutions, which showed she opened too

many installment accounts and "significant[ly] increase[d]" activity on previously inactive accounts. (*Id.*) Other parts of the email listed Goldman's insignia, address, antidiscrimination notice and involvement with Apple Card. (*Id.* at 3–5.)

Williams sued Goldman and JPMorgan Chase Bank, N.A. in March 2026 for alleged violations of federal and state law. (Compl. ¶ 1, Dkt. No. 2.) In May of 2026, Goldman answered Williams' complaint and asserted several affirmative defenses, including that "Plaintiff's claims may be subject to binding arbitration pursuant to a valid and binding arbitration agreement[.]" (Goldman's Answer at 10, Dkt. No. 26.) In late May, the Court dismissed the claims against Chase with prejudice. (Mem. Order, Dkt. No. 30.) On June 12, 2026, Goldman moved to compel arbitration and stay this action. (Mot. to Compel, Dkt. No. 32.)

II

Courts evaluate motions to compel arbitration under either the Rule 12(b)(6) motion to dismiss standard or the summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). If it is "apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* (internal quotation marks and citation omitted). But if the complaint and related documents do "not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel with reliable evidence that is more than a naked assertion that it did not intend to

be bound by the arbitration agreement, then the court shall apply the Rule 56 standard." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 774) (cleaned up).

The Court considers Goldman's motion under the 12(b)(6) standard. Williams alleges that she entered into the Apple Card Customer Agreement ("the Agreement") when she opened her account in September of 2025, (SAC ¶ 15), but denies that it contains, or at least that she assented to, an arbitration provision, (Pl.'s Reply to Def.'s Mot. to Compel Arbitration at 2, 6, Dkt. No. 39). But Williams attached excerpts of the Agreement to her motion for leave to file a second amended complaint. (Williams' Exhibits at 126-127, Ex. H, Dkt. No. 25-2.) She there provides a hyperlink to the full Credit Agreement that she says "governs Plaintiff's Apple Card account."[1] (*Id.* at 126.) That Agreement contains an arbitration provision, *id.*, and documents not specifically referenced in the complaint may be considered under the Rule 12(b)(6) standard when they are "integral" to the complaint, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Williams' "contractual rights under the Apple Card Customer Agreement" are integral to her Second Amended Complaint, (SAC ¶ 52), and the Agreement's Arbitration Provision is apparent from the complaint and the documents it relies upon, *Guidotti*, 716 F.3d at 776.

[1] Found at www.goldmansachs.com/terms-and-conditions/Apple-Card-Customer-Agreement.pdf. The fact that she omitted "www." in her hyperlink does not obscure the source to which she refers.

Williams contends that limited discovery is needed on the issue of arbitrability because she and Goldman rely on different versions of the Agreement. (Pl.'s Reply to Def.'s Mot. to Compel Arbitration at 8.) But both are substantially identical. (*Compare* Williams' Exhibits at 126 (Ex. H Hyperlinked Source) *with* Agreement, Dkt. No. 32-4). Each have the same substantive provisions and Arbitration Provision but contain different annual percentage rates, which are irrelevant here. *Id.* This single difference does not provide "reliable evidence . . . that [Williams] did not intend to be bound by the arbitration agreement" that she relied upon in her complaint and supporting documents. *Young*, 119 F.4th at 319.

III

Before compelling arbitration, a court must determine whether a valid agreement to arbitrate exists and if the dispute falls within the scope of the agreement. *Kirleis v. Dickie, McCamey & Chilcote*, P.C., 560 F.3d 156, 160 (3d Cir. 2009); *see also Young*, 119 F.4th at 319–20.

A

The Agreement and its Arbitration Provision are valid. The Federal Arbitration Act enables federal judges to enforce contracts to arbitrate only after they "hear the parties" and are "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" 9 U.S.C. § 4. This "affirmatively requires" a court to inquire into the formation of arbitration agreements, "namely the element of mutual assent." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 398 (3d Cir. 2020); *see also Sandvik AB v. Advent Int'l*

*Corp.*, 220 F.3d 99, 108-9 (3d Cir. 2000). And state contract law governs whether parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The Agreement's choice-of-law provision states that it "will be governed by and construed in accordance with federal law and any applicable laws of the State of Utah[.]" (Agreement at 16.) Under Utah law:

> A credit agreement is binding and enforceable without any signature by the party to be charged if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). Pursuant to subsection (ii), Utah courts have found that the use of a credit card following the receipt of the agreement constitutes acceptance. *See MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah Ct. App. 2006); *Cap. One Bank (USA), NA v. Wilkerson*, 2009 UT App 333 (2009).

The Agreement between Williams and Goldman states that "[b]y accepting, using or permitting others to use your Apple Card Account or adding your Card to Apple Wallet, you are agreeing to be bound by this 'Agreement,' which includes this Apple Card Customer Agreement[.]" (Agreement at 3.) Williams "used the Apple Card," (SAC ¶ 18), and her complaint relies solely upon the "January 8, 2026[,] adverse action on the Apple Card" that reduced her credit limit "from approximately $4,500.00 to $500.00," (*Id.* ¶26).

Williams assented to the Agreement and its Arbitration Provision. When an arbitration clause is embedded within a larger contract to which a party has assented, specific assent to the arbitration clause itself is unnecessary. *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 108 (3d Cir. 2000); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180-81 (3d Cir. 1999). The Agreement that Williams says binds her includes an "Arbitration Provision" that directs signatories to "PLEASE READ. . . CAREFULLY" because it "contains important information that affects your legal rights." (Credit Agreement at 19.) It also states that "[c]redit is being extended to you and you are being provided access to and use of your Account on the basis of the inclusion of the following arbitration provision" and that "accepting this Agreement or using your Account" constitutes a waiver of rights to participate in a class action, and that a party "knowingly and voluntarily" waives her right to a jury trial "on all Claims subject to this Agreement." (*Id.*)

The Arbitration Provision also states that Williams may reject it within "90 days after the opening of [her] account." (*Id.*) Williams concedes that she did not reject the Provision and disclaims she ever knew that it applied to her account. (Williams' Reply at 6, Dkt. No. 39; *see also* Plaintiff's Declaration ¶ 6, Dkt. No. 33-1.) But a party cannot sign a "contract and thereafter assert ignorance or failure to read the contract as a defense." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987); *see also Mackley v. Openshaw*, 456 P.3d 742, 749 (Utah 2019) (same).

B

If an arbitration agreement is valid, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). State law "serves as the baseline for ascertaining an arbitration clause's scope, notwithstanding the fact that federal law may also, under certain circumstances, have a role to play." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 521 (3d Cir. 2019); *see also Moon v. Breathless Inc.*, 868 F.3d 209, 212–13 (3d Cir. 2017) (same). And when state law does not conclusively determine whether a claim is within the scope of an arbitration agreement, the FAA's presumption in favor of arbitration controls. *Remicade*, 938 F.3d at 521. Thus, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019); *see also White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) ("[T]he presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract holds." (citation omitted)); *Remicade*, 938 F.3d at 522 (same). Moreover, the federal presumption of arbitration is "particularly applicable where the arbitration clause at issue is broad." *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000).

Utah courts determine whether a claim falls under an arbitration clause by referring to the clause's plain language and ordinary meaning. *See Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716, 720 (Utah 2009). In *Peterson*, the

Utah Supreme Court assessed an arbitration provision in which the parties agreed to arbitrate "any dispute arising under this agreement." *Peterson*, 217 P.3d at 720. The plain meaning of "arising under" was broad, the Utah Supreme Court found, and included all duties and claims that "arise out of the relationship between the parties created by the contract" with "no independent existence outside of the contract." *Id*. at 722.

Like *Peterson*, the Arbitration Provision in Williams' Agreement is broad. It provides that Goldman "may elect, without the other's consent, to resolve any Claim by individual binding arbitration" unless the claim is in a court where trial has begun or where final judgment has been entered. (Credit Agreement at 19.) The Arbitration Provision defines "claim" as:

> **any claim, dispute, or controversy** (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims, and third-party claims**, arising from or relating to**: (i) this Agreement, your Account or your relationship with us; (ii) any servicing of your Account by our agents or service providers; (iii) advertisements, promotions or statements related to this Agreement or your Account; (iv) your application for credit; (v) credit bureau reporting or debt collection on or related to your Account; and (vi) your access to and use of your Account from or using any products or services provided by Apple Inc. and its affiliates.

(*Id*. (emphasis added).)

Williams' claims all arise from or relate to the Agreement and Goldman's advertising or servicing of her account. In Count I, Williams alleges under 42 U.S.C. § 1981 a "contractual injury" caused by her "contract with Defendant Goldman Sachs, namely the Apple Card Customer Agreement." (SAC ¶¶ 50, 52.) Count II alleges violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691,

and describes Williams as an applicant "contractually liable regarding an extension of credit" from Goldman under the Agreement. (*Id.* ¶¶ 59–60.) In Count III, she alleges violations of 15 U.S.C. §§ 1637(i) and 1665(c), and describes Goldman's obligation to provide her adequate written notice before "implementing a significant change in account terms" because they are in a "credit relationship." (*Id.* ¶ 71.) Count IV alleges violations of the Fair Credit Reporting Act that, again, concern the obligations of creditors to debtors that are relevant only because of Williams' Agreement with Goldman. (*Id.* ¶¶ 74–79.)

Counts V through VIII allege violations of state law. Count V concerns Goldman's marketing of the Apple Card, (*Id.* ¶ 84), while Count VI asserts unfair or deceptive acts related to credit transactions, (*Id.* ¶ 88). Both rest necessarily on Williams' credit relationship with Goldman. Counts VII and VIII are explicitly contract-based, namely the purportedly false representation that the Apple Card was "designed to help her lead a healthier financial life," (*Id.* ¶ 95), and Goldman's unjust enrichment "through her continued use of the Apple Card," (*Id.* ¶ 99). Each claim "arise[s] out of the relationship between the parties created by the contract" with "no independent existence outside of the contract." *Peterson*, 217 P.3d at 722.

IV

Goldman has not waived its right to arbitrate. "A known right to compel arbitration under the Federal Arbitration Act, *see* 9 U.S.C. § 4, can be waived only if the right holder intended to relinquish or abandon that right." *Parkin v. Avis Rent A Car Sys., LLC*, No. 25-1385, 2026 WL 2472484, at *4 (3d Cir. Aug. 24, 2026)

(citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). A party can only impliedly waive the right to compel arbitration by acting inconsistently with the intent to assert the right. *Parkin*, 2026 WL 2472484, at *4; *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339–40 (3d Cir. 2023); *Morgan*, 596 U.S. at 419.

Goldman states in its answer to the amended complaint that Williams' "claims are subject to binding arbitration and GS Bank specifically reserves, and does not waive, the right to compel arbitration of such claims." (Goldman's Answer at ¶ 2, Dkt. No. 26.) In its affirmative defenses, Goldman maintained that the "claims may be subject to binding arbitration" and that it "specifically reserves, and does not waive, the right to compel. . . ." (*Id.* at 10.)

However, "precedent does not treat a reservation of the right to arbitrate as an absolute bar to finding an implied waiver of the right – a party may impliedly waive its right despite an express reservation when its conduct unambiguously indicates a relinquishment or abandonment of the right." *Parkin*, 2026 WL 2472484, at *4. The waiver inquiry is "necessarily case specific and thus depends on the circumstances and context of each case." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011); *see also Parkin*, 2026 WL 2472484 at *5 (finding implied waiver "depends on the procedural posture of the case and the conduct of the party asserting the right"). Circumstances courts consider include: (1) the amount of time litigation persisted during which a party could move to compel; (2) the kinds of motions filed in the litigation before the motion to compel; and (3)

whether the assertion of a right to arbitrate depends on the development of a factual record. *Parkin*, 2026 WL 2472484 at *4–*5.

A delay inconsistent with the intent to arbitrate is generally longer than one year. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 214 (3d Cir. 2010) (finding arbitration was waived after fifteen months); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir. 1992) (litigating a "case for almost a year" points towards waiver). Goldman moved to compel arbitration less than six months after litigation began and just days after Williams filed her second amended complaint.

Williams argues that Goldman impliedly waived its right to compel arbitration by filing an answer to her complaint, in which Goldman asserts affirmative defenses and seeks judgment in its favor. (Williams' Resp. to Mot. at 10, Dkt. No. 33); (*see also* Goldman's Answer at 10–12.) The Third Circuit Court of Appeals has held that motions to dismiss weigh more heavily toward implied waiver than "filing an answer asserting the arbitrability defense," but that even motions to dismiss do not themselves imply waiver when the intention is "not pronounced enough." *Parkin*, 2026 WL 2472484 at *5; *see also Morgan*, 568 U.S. at 415 (implying that "fruitless mediation" and costs of "opposing the motion to dismiss" might weigh towards waiver). Answers to complaints with an affirmative arbitrability defense, such as Goldman's, are the kind of litigation method that counsels against a finding of implied waiver.

Finally, Goldman's assertion of the right to arbitrate does not depend on the development of a factual record. It is clear from the face of the pleadings that a

valid agreement exists that contains an arbitration provision. The right is ripe, and Goldman exercised it without delay.

V

Goldman further requests a stay of these proceedings. (Goldman's Mem. of L. in Supp. of Mot. at 17, 32-1.) The Federal Arbitration Act requires that a Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. The Court grants this request.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.